We are now ready to hear the case of Pennell v. Global Trust Management, 2015-24, and Mr. Phillips, you may proceed. Good morning, Your Honors, or good afternoon, actually, at this point. First off, I'd like to compliment your staff. They worked really tirelessly to help us defeat technology, and we appreciate that very much. In this case, Ms. Pennell found herself on hard times, wound up taking out a payday internet loan from Mobile Loans. She couldn't pay it. She wound up consulting with Legal Aid. Legal Aid sent out a notice to Mobile Loans saying, hey, she's got an attorney, and she has to, due to her circumstances, refuse to pay. Mobile Loans then sold that debt after default to Global, and Global then started collecting it directly from Ms. Pennell. The issue really... But, Mr. Phillips, can I ask you, as I understand this record, Global did what the Fair Debt Collection Practices Act contemplates. It sent her an initial letter, and I don't see any complaint about the content of that letter. And then when she notified them about her attorney and her defenses, they stopped the contact. So what is it that went wrong here? What went wrong here, Judge, is they didn't do that contact through her attorney. As this court recognized in Tinsley v. Integrity, in similar circumstances, when a consumer notifies an original creditor they have an attorney, the debt collector, when they sell that, or the creditor, when they sell that to a debt buyer, the debt buyer can keep collecting the debt. They just have to do it through the attorney. The right to counsel is fundamental in our society. We don't need to know there's a fancy... either the FDCPA or somewhere else. They need to dig into each file so deeply to the point that they find correspondence, they realize there's an attorney for this debt, that the lawyer-client relationship is still there, and I'm questioning where that duty comes from and why they aren't doing all they need to do by sending the initial letter, which invites her to say, I'm represented by counsel. She did, and that happened. Well, Judge, it's a question of media, all right? When you become the owner of a debt, are you allowed to just buy the stuff that allows you to collect, or can you just ignore the stuff that regulates how you collect or might impact how you collect it? To use the words of a panel of this court in Olvera v. Blitt, they step into the shoes, whatever size those shoes are, when they're the ass and oar. And here, that shoe had a rock in it. Then why, Mr. Phillips, the statute says if the debt collector knows the consumer is represented by an attorney. I could appreciate your argument more if it said should have known in addition, knows or should have known, but knows is very specific of actual knowledge. How do we get around that plain reading of the statute? Because in this case, they knew if they'd looked at their own records. You're rewarding them to be an ostrich by just not. I'm sorry, Judge. I'm sorry, I know it's hard over this. There's an if there. You're asking us to read in the if. I'm not asking you to read in anything. I'm saying it was already there. Let's use the analogy that the district court used of a home purchase, okay? When you buy a home, you don't acquire all the fuzzy, warm feelings about that home. You don't get the, oh, the neighbors hate each other or, oh, there was a great block party. But you do get, when you buy the home, all the restrictions, covenants, and easements of record. So the fact that you didn't know that there was a utility easement doesn't allow you to erect a building in the back of your property that violates utility easement. But that's because there's an underlying set of laws that put you on notice of that. And I think we're assuming the answer to the question here. The question is where does that duty come in for this particular piece of information when, as Judge Sandeep says, the statute seems to call in the initial stages only for actual knowledge. And there's a process. Maybe she's got to notify two people. She first has to notify the original creditor and then the debt collector. Well, that's the whack-a-mole theory, Judge. Well, I don't think it's whack-a-mole. It's twice. You didn't say there was anything wrong with the notice. Well, Judge, if the consumer once has an attorney, these elderly and disabled people frequently give up when that doesn't work. Because in this industry, these debts are packaged up and sold in portfolios, and then they're sold in another portfolio and they're not another debt buyer. So under your questioning or your scenario, the consumer would have to keep notifying people, I've got an attorney, I refuse to pay. I've got an attorney, I refuse to pay. I've got an attorney, I refuse to pay. And that's just not appropriate here. The media is there when it's available to them. The duty comes under the common law. If I'm the S&R, you know, the S&E, I take exactly whatever's in there. And what was in there is stuff that said the person had an attorney. So you can't just let them take the parts and let them collect and refuse to take the parts that may hamper how they collect. It doesn't stop them from collecting. It just says you had to send that notice to the consumer's attorney. Or they could have kept mark in their credit, which is a way to collect. Or if they were serious about the debt, they could have sued the consumer. Or they could have gone away. So it's at common law. They're just coming in, here it is, it's available. And media is all this paper stuff that is available if they want it. Media includes the contract if they want to enforce it. We've seen that in various cases where people want to enforce contracts. Debt buyers always seem to find the contract when they want to enforce arbitration. Mr. Phillips, isn't your position here contrary to the Randolph case? You were involved in that case. You argued it. I did. According to 368F3rd at 729, courts do not impute to debt collectors other information that may be in the creditor's files. Isn't that the standard of the law? That's a good question, Judge. But the facts aren't the same there. In Randolph IMBS, that was a case where it was the old version of the debt collection industry. In the older version of the debt collection industry, you had creditor ABC hired debt collector XYZ as principal and agent. And you couldn't, in that case, Judge Eastbrook said, you couldn't impute the knowledge of the principal to the agent, the debt collector. Here they're both. They're the principal and the principal. It's not principal and agent. It's not imputed knowledge. It's their own knowledge that they've decided they don't want to look at. Is there anything in this statute, in the Fair Debt Collection Practice Act, that says we should treat debt collector owners different than debt collectors? There's nothing. They're covered. They're what's known as a principal purpose debt collector. They become the same. So, unfortunately, when they decide to be But you're saying here there should be different requirements for notice, depending on whether or not they become the owner of the debt or they're just the mere collector. No, it's not different, Judge. So let's say Global hired ABC collectors, and ABC collectors sent this out, and Global didn't bother to tell them about the attorney rep. Well, we couldn't sue ABC collectors because that would be four square within Randolph, principal to agent, the agent didn't know. But here Global decides to collect it on their own. They're the ones that should have known that because that material was readily available. Mr. Torres, their 30B6 designee, acknowledged this much. He said, we don't bother to buy any of that stuff because it's too much information. We don't bother to obtain any of that information. Well, that's not appropriate. That's not right. You're going to allow them to play games with this when it was readily available. The minute they got sued, boom, they contacted Mobile Loans and said, oh, yeah, here's something. By then it was too late. The right to counsel had been violated, and it's an important right for these consumers. None of my clients sign up with these legal aid groups to get a whiz-bang federal lawsuit. It's the last thing on earth they ever want to do. They're forced to do this, and then frequently my clients give up eventually because it goes from Debt Collector A to Debt Buyer to Debt Buyer C to Debt Buyer D. This is a matter of first impression. Yes, the statute doesn't cover it explicitly because it didn't exist when the statute was enacted in 1978. But the collection industry has evolved. They could have gotten this information. The information was in fact there, and the information should bind them as to attorney representation. I see I'm almost out of time. Okay. Well, we'll stop here then. Thank you. There's the rest of my time. Mr. Little. Good afternoon. May it please the Court. Brendan Little on behalf of Defending Global Trust Management, LLC. Judge Brennan, you're correct. This court is bound by the decision in Randolph. It's not disputed in this case that Global Trust did not have any actual knowledge that it was represented by counsel or that the consumer was represented by counsel or that she had requested that communication cease. Without that actual knowledge, there's no trigger of liability. In this case, the Randolph case was three cases consolidated up into one, and Judge Easterbrook highlighted the particular facts of the Alexander case where there the consumer incurred a debt through her dentist. The dentist then passed away. The consumer filed for bankruptcy protection. The dentist was on notice or was on the schedules that the debt was subject to bankruptcy protection, but the dentist estate sent out all his receivables to a collection agency, and the collection agency attempted to collect. And Mr. Phillips, his side argued in that particular case that, oh, they're charged with notice. But as Judge Easterbrook says, no, this is actual notice. And as Judge Wood, you correctly pointed out, that's why we have 1692G validation requirements, that if a consumer receives a letter and they're either represented by counsel or wants to assert some rights, they certainly can do so. And the 1692G requirement worked in this case. As when Global Trust found out that Ms. Pinnell was represented by counsel, it immediately ceased conduct and stopped collecting. And the statute worked. So this court is bound by Randolph. Schmidt, from the Eighth Circuit in 2005, went the same way. And there are several district courts who have recently rejected Mr. Phillips' theory. The Dow case, which is currently on appeal to this court and fully briefed, the district court rejected Mr. Phillips' argument. And the Zekio case, which stayed in the Northern District of Illinois, pending a resolution of this case, Mr. Phillips' theory was again rejected. So while I appreciate Mr. Phillips' efforts to kind of work around the statute and create or manufacture claims, his claim is squarely rejected by Randolph and the subsequent decisions. And the second point I want to make this afternoon is that, yes, while standard black-letter law and S&E steps into the shoes of the S&R, because they get the contract or buy the debt, they have the ability to enforce those particular rights. As Judge Sweeney said down below in the district court, you don't acquire knowledge. Knowledge is neither a right nor a liability. It's a state of mind. And here, a debt buyer acquiring an account- Isn't that an overstatement? I mean, there's actually a lot of knowledge that gets created, whether in the field of intellectual property rights where you gain knowledge of trade secrets or perhaps here, you know, imputed knowledge of everything that's in the file. And you shouldn't be allowed to just sit there and decide that you're not going to read the file before you start collecting. I would agree with you, Judge Wood. But here, there's no evidence in this record, and in fact, it points to the contrary, that Global Trust, before it sent the letter, was ever provided notice that Ms. Pennell was represented by counsel. Just because the original creditor may have had something in their file and did not share it with Global Trust, Global Trust can't be penalized. And that's the same rationale that Judge Easterbrook reached in Randolph. The mechanics of this, as I understand it, although please correct me, is that when these sales of debt packages happen, there's basically maybe an Excel sheet or something, some general transmission of the data. It's not actually a bunch of physical files, right? That's correct, Judge. It varies from case to case, but in large part, it is the one large spreadsheet, correct? The creditor charges off the accounts and sells a number of accounts at various times providing information, although some creditors do provide underlying media, as Mr. Phillips said, which are copies of the original contracts or statements of accounts, correspondence, et cetera. In this case, with all due respect to Mr. Phillips, I think he's misquoting Mr. Torres' testimony. Mr. Torres didn't testify that Global Trust decided not to buy certain material. That's not true. Here, they were provided with information, and they utilized the information that they had, and knowledge is a state of mind. It would be different if the record showed that Mobile Loans provided a copy of the letter from Ms. Pennell's counsel, and Global Trust chose to ignore it or simply didn't look. They said, oh, yeah, that was in our computer system. We didn't bother to look, but that's not the case. There's nothing in this record that shows that Mobile Loans transmitted either information or a copy of the letter. Wasn't it undisputed at the summer judgment stage that Mobile Loans did not provide Global Trust with the letter? I thought that fact was undisputed. That's correct. There's nothing in the record to even point in that direction. So, you know, just because Global Trust acquired the account and had the ability to collect on the receivable does not mean that they acquired this purported knowledge that Mobile Loans had. So unless the court has any other questions, for those reasons, I ask that you affirm the district court below. All right, thank you. Mr. Phillips, you were almost out of time. I'll give you a minute to rebut. Thanks, Judge. Here's our deposition. What would prevent you from requesting any communication like this from Mobile Loans? Answer, too much information to provide in one shot. We purchased thousands of accounts. Judge, that's just not right. We just want to get the collectability stuff and not the uncollectability stuff. That's just not appropriate. This case is four squared within Olvera versus Blitt as far as they stepped in the shoes. It's a common law issue. They took the good. They have to take the bad or the limiting factors. They don't get to cherry pick what allows them to continue to collect. And there's at least one court of appeals case that's already rejected the theory that the 1692G notice is some sort of curative notice that we can violate the law so long as we give you the 1692G notice, and we'll submit that case decision to your honors because I don't think that's the proper standard. And I appreciate your time this afternoon. Thank you very much. All right. Thank you. Thanks to both counsel. The court will take the case under advisement and we will be in recess.